Benjamin F. Haas and Addie R. Haas v. Commissioner.
Haas v. Commissioner
Docket No. 56640.
United States Tax Court
T.C. Memo 1956-165; 1956 Tax Ct. Memo LEXIS 126; 15 T.C.M. (CCH) 876; T.C.M. (RIA) 56165; July 16, 1956
*126 Petitioner, Benjamin F. Haas, organized Oxford Looms Inc., a woolen mill, in 1933, and at all times thereafter had complete control over the operation and management thereof. All of the outstanding common stock was given to his daughter. Petitioners owned the non-voting preferred stock. From the time of its incorporation to and throughout 1948, 1949, and 1950, the years here in issue, petitioners advanced various sums of money to Oxford. The sums advanced during 1948 were pursuant to an agreement whereby in consideration for such advances, petitioner and Oxford agreed to share the profits and losses of the corporation on a 50 per cent basis. In 1949 and 1950, petitioners advanced funds under a similar agreement, except that they were to assume all losses. All advances made during the three years were to be repaid prior to any division of profits. Oxford sustained net operating losses in each of the three years. Petitioners deducted one-half of the loss in 1948 and the entire losses in 1949 and 1950 on their tax returns for such years. Held, the profit and loss arrangements between petitioner and Oxford were not bona fide and the losses claimed by petitioners on their joint returns *127 are not deductible under any provision of the 1939 Code. Note: This Memorandum Findings of Fact and Opinion supersedes T.C. Memo. 1956-50, filed February 29, 1956 [15 TCM 211,]. James R. Worsley, Jr., Esq., for the petitioners. Ellyne E. Strickland, Esq., and Emil Sebetic, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion *128 This proceeding involves the following deficiences in income tax determined by the respondent under the provisions of the 1939 Code: Year
Deficiency
1948
$10,758.81
1949
20,874.64
1950
24,619.24
The only issue is whether petitioners sustained deductible losses during the years in issue in connection with the operation of a woolen mill. [1]
This case was originally heard in New York, New York, on November 8, 1955. Our Memorandum Findings of Fact and Opinion was filed on February 29, 1956, and the decision entered in respondent's favor on March 7, 1956. Petitioner, on March 22, 1956, moved that the case be reconsidered. Oral argument on that motion was heard on April 26, 1956. The motion was granted and our prior decision vacated on May 24, 1956. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Benjamin *129 F. Haas (hereinafter referred to as the petitioner) and his wife, Addie R. Haas, were residents of New York, New York, during the years in issue and filed their Federal income tax returns on the cash receipts and disbursements basis with the collector of internal revenue for the third district of New York. Petitioner has enjoyed a long and successful career in the textile business. On July 10, 1933, he organized Oxford Looms, Inc., a woolen mill (hereinafter referred to as Oxford), under the laws of Massachusetts. He had all of its authorized common stock, consisting of 500 shares, issued to his daughter, Marian H. Stern, as a gift. She continued to hold all of the authorized and outstanding common stock of Oxford to and throughout the years in issue. Since the time of its incorporation to and throughout the years in issue, the operation and management of Oxford has been under the direct supervision and control of petitioner. He was primarily responsible for all important policy and operational decisions of the mill. Petitioner's daughter, as the sole owner of Oxford's common stock, has relied primarily upon her father with respect to any actions in connection with the mill which *130 it was necessary for her to take. From January 12, 1948 and throughout the years in issue, the three directors of Oxford were petitioner, his secretary - William Gegenheimer, and E. P. Reichert. From the time of its incorporation until August 22, 1936, petitioner and his wife loaned various sums of money to Oxford. In consideration for the cancellation of the debt thus owed to them, Oxford, on that date, issued to them 500 shares of nonvoting 6 per cent cumulative preferred stock having a total par value of $50,000. Petitioner continued to advance money to Oxford and, on January 1, 1944, Oxford owed him $110,859.13. From January 1, 1944 to December 31, 1946, it repaid $66,780.00 of such sum. Further charge-offs against such outstanding balance were made during the years in issue to reflect a portion of the losses sustained by Oxford and assumed by petitioner as hereinafter set forth. From some time in 1942 until June 30, 1947, Oxford's plant and equipment were leased to another corporation. When the lease terminated in 1947, the woolen industry was in a depressed state. On January 12, 1948, petitioner and Oxford agreed that they would enter into a joint venture in which petitioner *131 would provide the working capital for the mill and Oxford would provide its equipment and facilities. Petitioner and Oxford were to share the profits or losses from their joint venture equally. The agreement between them also provided that petitioner was to be repaid all advances which he made before any division of profits. On January 3, 1949, a similar agreement was entered into between petitioner and Oxford except that petitioner's wife was also to advance money and he and she were to bear all losses of the joint venture but were still to divide any profits with Oxford on a 50 per cent basis after repayment of advances. The agreement of January 3, 1949, continued in effect throughout 1950. During the three years in issue, petitioner and his wife advanced a total of $105,712.88, and received repayments totaling $7,800.00. The operating losses sustained by Oxford, as hereinafter set forth, were charged off on its books against the advances and only the balance thereof remained as an account payable to petitioner. Only petitioner and his secretary, William Gegenheimer, were present at the directors' meetings where the aforementioned agreements were entered into. Gegenheimer relied *132 primarily on petitioner in taking any action with respect to Oxford. He had been employed by petitioner since 1919, and had been his secretary since 1935. During the three years in issue, Oxford sustained net operating losses as follows: 1948
$38,685.28
1949
32,068.96
1950
46,436.07
Oxford filed Federal income tax returns disclosing a net loss for the year 1948 of $18,998.26, and no taxable net income or loss for the years 1949 and 1950. On its 1948 return, it showed an item labeled as "Portion of Loss Assumed by Agreement" in the amount of $18,998.26, and on its returns for the years 1949 and 1950, showed items labeled "Loss Assumed by Agreement" in the amounts of $39,043.78 and $45,978.91, respectively. It was still a going concern at the date of the hearing. On their individual returns for the years in issue, petitioners claimed losses from the operation of Oxford as follows: 1948
$20,361.24 [2]
1949
39,043.78
1950
45,978.91 They reported the following amounts of adjusted *133 gross income, Prior to the deduction of such losses: 1948
$74,864.67
1949
99,698.77
1950
84,936.69 In determining the deficiencies herein, the respondent disallowed the loss deductions so claimed. Opinion RICE, Judge: The petitioners advanced two theories in support of the deductibility of the losses in issue. They first argue that such losses were incurred by them in a transaction entered into for profit within the meaning of section 23(e)(2), and, in the alternative, that the losses were incurred in their trade or business within the meaning of section 23(e)(1). [3] No deductible losses are claimed by petitioners on the basis of the worthlessness of their advances to Oxford. Their arguments are confined solely to the net operating losses sustained by Oxford. *134 The respondent argues in support of his disallowance of the claimed loss deductions that the transactions between petitioner and Oxford were not bona fide arm's length transactions and that the losses resulting therefrom are, therefore, not deductible. We agree with the respondent that the profit and loss arrangements entered into between petitioner and Oxford were not bona fide. We are satisfied that petitioner's attempt to claim the corporation's losses as his own was a plan for improper tax avoidance. ; and . As the Supreme Court said in : "The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. * * *" Although Oxford was a separate, legal, taxable entity, petitioner was, at all times, *135 in complete control and supervision of its operations. His daughter owned the common stock but testified at the hearing that she relied on her father for guidance in taking any necessary action with respect to the mill. Likewise, William Gegenheimer, who was petitioner's secretary, testified that he relied primarily on petitioner in taking any action required of him as a director of Oxford. When the profit and loss agreements were made, only petitioner and Gegenheimer were present and acted as a majority of the directors in behalf of the corporation. To permit the losses in question to be deducted under section 23(e)(2) would, of course, presuppose the bona fides of the profit and loss arrangements between petitioner and Oxford. Since we concluded that those arrangements were not bona fide, no loss deduction is allowable under that section. As heretofore noted, petitioner does not claim that the advances themselves became worthless or were lost, for the obvious reason that Oxford was still a going concern at the date of the hearing. The fact that on its books Oxford charged off its net operating losses against such advances, pursuant to the profit and loss agreements with petitioner, *136 did not create deductible losses allowable to petitioner under section 23(e)(2) of the Code. See ; and C. H. Wentworth, 25 T.C. , filed March 12, 1956. So also must petitioner's claim that the losses are deductible under section 23(e)(1), as losses incurred in trade or business, be denied. In support of that contention, petitioner argues first, that he was in the business of organizing and financing textile mills. The record is wholly insufficient to justify a finding to that effect. But even if that were so, it would be the worthlessness of the advances on which the claim for deductible losses would have to be based. And as we said with respect to petitioner's argument with reference to the deductibility of the losses under section 23(e)(2), the fact that Oxford charged off its net operating losses against the advances did not create deductible losses allowable to petitioner, since Oxford was a going business to and throughout the years in issue and at the date of the hearing. Petitioner's second argument that the losses in question are deductible, under section 23(e)(1), is that by virtue of the agreements entered *137 into with Oxford, its business became his. In support of that argument he cites (C.A. 1, 1931). In that case, the principal officer of a corporation, who was one of its stockholders, entered into an agreement with the other stockholders that he would serve as president, treasurer, and general manager of the company, would receive all of the net profits of the corporation, and would be liable for all losses incurred in its operation. The corporation thereafter sustained losses which the officer made good. The Court of Appeals held that such losses were deductible by him. That case is clearly distinguishable from the one before us here. We particularly note that if petitioner had taken over Oxford's business there would have been no reason for him to agree to share 50 per cent of the profits with it. The nub of this case is that petitioner chose a corporate form to carry on his activities in the woolen manufacturing business; he dominated and controlled the corporation, but it was a bona fide, separate, legal, taxable entity to which he advanced money. Having adopted a corporate form to carry on his activity in the woolen manufacturing *138 business, we think petitioner must be bound by that election and that in the years before us, when he had large sums of income from other sources, he should not be permitted to disregard the corporate entity and claim its net operating losses as his own. See Decision will be entered for the respondent. Footnotes
1. Error was assigned for the year 1950 with respect to the amount of deductible medical expenses in excess of 5 per cent of adjusted gross income only insofar as the amount of adjusted gross income is affected by the disallowance of the loss deductions here in issue.↩
2. The record does not disclose why the loss deduction claimed by petitioner and Oxford was more than the total net operating loss as stipulated by the parties.↩
3. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *↩